No. 19-1747C
Judge Schwartz

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DOE NO. 1,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO CERTIFY THE COURT'S JULY 26, 2022 ORDER
FOR INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS PENDING APPEAL

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, Jr.
Assistant Director

SARAH E. KRAMER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-0537
Facsimile: (202) 305-2062
Email: Sarah.E.Kramer@usdoj.gov

November 23, 2022                *Attorneys for Defendant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 3

I.    Factual And Legal Background .................................................................................. 3

II.   Proceedings In This Case ............................................................................................ 4

ARGUMENT ....................................................................................................................... 7

I.    Certification Of Interlocutory Appeal Is Appropriate .......................................... 7

    A.    The Validity Of 5 C.F.R. § 551.423(a)(3) Is A Controlling Question Of Law Whose Resolution Would Materially Advance The Ultimate Termination Of This Litigation ............................................................... 8

    B.    There Are Substantial Grounds For A Difference Of Opinion With Respect To 5 C.F.R. § 551.423(a)(3)'s Validity ..................................... 9

II.   A Stay Pending Appeal Is Appropriate ................................................................. 15

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Adams v. United States*,
  40 Fed. Cl. 303 (1998) ................................................................................... 12, 14

*Billings v. United States*,
  322 F.3d 1328 (Fed. Cir. 2003) .......................................................................... passim

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ............................................................................... 16

*Coast Fed. Bank, FSB v. United States*,
  49 Fed. Cl. 11 (2001) ..................................................................................... 7, 8, 15

*Fairholme Funds, Inc. v. United States*,
  147 Fed. Cl. 126 (2020) ..................................................................................... 8

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ......................................................................................... 15

*Pikes Peak Fam. Hous. LLC v. United States*,
  40 Fed. Cl. 673 (1998) ....................................................................................... 8

*Skidmore v. Swift*,
  323 U.S. 134 (1944) ........................................................................................ 11

*UnionBanCal Corp. & Subsidiaries v. United States*,
  93 Fed. Cl. 166 (2010) ..................................................................................... 16

*Zumerling v. Devine*,
  769 F.2d 745 (Fed. Cir. 1985) ............................................................................. 9

## Statutes

5 U.S.C. §§ 4101-4121. ........................................................................................ 12

5 U.S.C. § 4109 ................................................................................................. 13

5 U.S.C. § 4118(a) .............................................................................................. 12

5 U.S.C. § 5542(c) .............................................................................................. 13

28 U.S.C. § 1292(d)(2) ...................................................................................... passim

29 U.S.C. §§ 201-219 ............................................................................................ 3, 11

29 U.S.C. § 213 ........................................................................................................... 9

Government Employees Training Act,
    Pub. L. No. 85–507, 72 Stat. 327 (1958) ..................................................... 6, 12

Federal Employees Pay Comparability Act of 1990,
    Pub. L. No. 101–509, § 210, 104 Stat. 1389 (1990) .................................... 6, 13

**Rules**

RCFC 1 ......................................................................................................................... 2

**Regulations**

5 C.F.R. § 410.402 ...................................................................................... 12, 13, 14, 15

5 C.F.R. § 551.401 .............................................................................................. 4, 13, 15

5 C.F.R. § 551.421 ....................................................................................................... 4

5 C.F.R. § 551.423 ................................................................................................ passim

5 C.F.R. § 610.111(a) .................................................................................................. 4

5 C.F.R. pt. 307 .......................................................................................................... 10

29 C.F.R. § 785.2 ....................................................................................................... 11

29 C.F.R. § 785.27 ................................................................................................. 5, 10

29 C.F.R. § 785.32(b) ................................................................................................ 10

**Other Authorities**

45 Fed. Reg. 85659-01 (1980) ................................................................................. 14

45 Fed. Reg. 85651 (1980) ....................................................................................... 11

64 Fed. Reg. 69165 (1999) ....................................................................................... 11

70 Fed. Reg. 72065 (2005) ....................................................................................... 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DOE NO. 1,                           )
                                     )
            Plaintiff,               )
                                     )
      v.                             )
                                     )      No. 19-1747C
THE UNITED STATES,                   )      Judge Schwartz
                                     )
            Defendant.               )

### DEFENDANT'S MOTION TO CERTIFY THE COURT'S JULY 26, 2022 ORDER FOR INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS PENDING APPEAL

For the reasons set forth below, the United States respectfully requests that the Court certify its July 26, 2022 Order, ECF No. 68, for interlocutory appeal by amending the order to include the findings required under 28 U.S.C. § 1292(d)(2). In addition, the United States respectfully requests that the Court stay further proceedings pending appeal. We have contacted plaintiff's counsel; as of this filing, they have not indicated whether plaintiff will oppose this motion.

### INTRODUCTION

The United States respectfully requests that the Court certify for interlocutory appeal under 28 U.S.C. § 1292(d)(2) the question whether 5 C.F.R. § 551.423(a)(3) is valid. By the July 26, 2022 Order, the Court denied the United States' motion for summary judgment. ECF No. 68. Before the parties and the Court dedicate extensive time and resources to conducting discovery, briefing outstanding issues, and potentially calculating damages owed to potentially hundreds of plaintiffs, the Court should permit the United States Court of Appeals for the Federal Circuit the opportunity to consider the same question, which represents precisely the sort of dispositive legal question for which Congress enacted section 1292(d). It is a controlling question of law; there is substantial ground for difference of opinion; and an immediate appeal

on the question would materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(d)(2). Certifying the question for interlocutory appeal would promote the most expeditious and inexpensive resolution of this important case. *See* RCFC 1.

Plaintiffs will have a full and fair opportunity to explain their theory regarding 5 C.F.R. § 551.423(a)(3)'s validity to the court of appeals, and they will have the benefit of this Court's written decision in doing so. If the Federal Circuit reverses, this Court's certification decision will have vindicated the parties' and the public's interests by avoiding burdensome proceedings. And if the Federal Circuit affirms, the path forward will be clear: the Court will have obtained confirmation of its legal ruling on the Government's dispositive motion, possibly narrowed any disputes over the appropriate scope of discovery, and cleared the way for additional proceedings to resolve each plaintiff's claim. Either outcome is preferable to risking an appellate reversal after months or years of potentially unnecessary, burdensome, and expensive effort by the parties and the Court.

For the reasons stated above and explained in more detail below, this case exemplifies the circumstances for certification under section 1292(d)(2). It is appropriate for this Court to grant certification and to allow the Federal Circuit to decide whether an immediate interlocutory appeal is warranted. If the Court grants certification, both parties will have the opportunity to present their arguments to the court of appeals, which may then exercise its discretion to accept or to decline the appeal. *See* 28 U.S.C. § 1292(d)(2). Given the importance of the question presented and the size of plaintiffs' claims, there is no reason to deny the court of appeals the opportunity to consider that question. Further, it is appropriate to suspend all proceedings in the case pending appeal, which would conserve the scarce resources of the parties and the Court.

BACKGROUND

I.     Factual And Legal Background

Plaintiff, on behalf of themselves and all others similarly situated, claims overtime

compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, for time spent

studying, doing homework, and other activities outside the regularly scheduled training sessions

during the Federal Bureau of Investigation's (FBI) Basic Field Training Course (BFTC).  Compl.

¶ 1, Nov. 12, 2019, ECF No. 1.  Plaintiff is employed by the FBI as an Intelligence Analyst (IA).

Compl. ¶ 8.  The FBI requires all IA candidates to complete its BFTC.  Compl. ¶ 11; A11.[1]  The

purpose of the BFTC is to ensure IA candidates–otherwise known as New Intelligence Analyst

Trainees (NIATs)–will, upon graduation from the course, have attained the necessary basic

proficiencies in specialized knowledge, skills, and abilities needed to perform their assigned

duties.  A4; *see also* A33 at ¶ 11.  NIATs are subject to a probationary period beginning on the

first day that they report for the BFTC.  A4; *see also* A32-33 at ¶ 8.  Trainees who fail to meet

the minimum proficiency and suitability standards for their jobs may be dismissed from the

BFTC and become ineligible to participate in future sessions of the BFTC.  A7.  Further, failure

to complete and pass basic IA training results in removal from the IA job series and possible

termination from the FBI.  A12; A35 at ¶¶ 17-18.

Plaintiff participated in the FBI's BFTC from January 2018 through April 2018 at the

FBI Training Academy in Quantico, Virginia.  Compl. ¶ 9.  Plaintiff alleges that, in addition to

attending training sessions, NIATs needed to study materials, work on team projects, write

reports and other training documents, prepare briefings, and prepare for and perform interviews–

---

[1] "A_" refers to the page number of the appendix to our motion for summary judgment,
March 1, 2021, ECF No. 48.

in other words, to do homework–and that they were not paid overtime for all of this time. Plaintiff alleges that they are therefore owed overtime under the FLSA.  Compl. ¶¶ 14, 20.

Pursuant to Office of Personel Management (OPM) regulation 5 C.F.R. § 551.423(a)(3), however, "[t]ime spent in apprenticeship or other entry level training . . . outside regular working hours shall not be considered hours of work"–that is, hours subject to overtime compensation– "provided no productive work is performed during such periods."[2]  Regulations implementing the FLSA define "regular working hours" as "the days and hours of an employee's regularly scheduled administrative workweek."  5 C.F.R. § 551.421.  "Work that is scheduled in advance of an administrative workweek" constitutes the "regularly scheduled administrative workweek." 5 C.F.R. § 610.111(a)(2).  Plaintiff has not alleged that the overtime work that they allegedly performed during the training course was productive work performed outside of the regularly scheduled administrative workweek.

II.    Proceedings In This Case

On November 11, 2019, plaintiff filed a collective action complaint in the Court of Federal Claims.  The United States filed a Rule 12(b)(6) motion to dismiss on February 11, 2020.  ECF No. 23.  The United States explained that plaintiff had failed to state a claim for overtime compensation for time allegedly spent studying and engaging in related activities during the BFTC because (1) plaintiff was an entry-level employee attending an entry-level training course, and (2) in those circumstances, OPM regulation 5 C.F.R. § 551.423(a)(3) provides that overtime

---

[2] "Productive work" in this context means work performed for the benefit of the employing agency, as distinguished from training exercises that are part of the training course. *See* 5 C.F.R. § 551.423(a)(4) ("Time spent by an employee performing work for the agency during a period of training shall be considered hours of work."); 5 C.F.R. § 551.401(a) ("All time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is 'hours of work.'").

compensation might be available only if the alleged studying was "regular" or "productive work," which plaintiff had failed to allege.  In response, plaintiff contended that (1) they had not alleged that they were an entry-level employee in their complaint, and (2) even if the Court determined that they were an entry-level employee and that the OPM regulation did not permit them to receive overtime, Department of Labor (DOL) regulation 29 C.F.R. § 785.27 did.  In our reply in support of our motion to dismiss, we explained, among other things, that (i) the OPM regulation, not the DOL regulation, applies to Federal employees, and (ii) the Court could take judicial notice of the FBI website's description of the BFTC as entry-level training.  March 26, 2020, ECF No. 31.

On October 27, 2020, the Court ordered the parties to submit supplemental briefs addressing whether OPM regulation 5 C.F.R. § 551.423(a) or DOL regulation 29 C.F.R. § 785.27 applied to this case and, assuming it is applicable, whether 29 C.F.R. § 785.27 requires that plaintiff receive overtime compensation for any BFTC training activities that exceeded eight hours per day or 40 hours per week.  Order, ECF No. 35.

During the course of oral argument, the Government agreed to convert the motion to dismiss to a motion for summary judgment, in order to provide additional evidence demonstrating that the BFTC is entry-level training and regarding the probationary employment status of NIATs during training.  Order, Dec. 9, 2020, ECF No. 40.  The parties' ensuing summary judgment briefs largely mirrored those in the briefing on the motion to dismiss, albeit with additional factual argument about whether the BFTC was an entry-level course and with more emphasis on the issue of whether the OPM or DOL regulations should apply.  *See generally* Def.'s Mot. for Summ. J., March 1, 2021, ECF No. 48; Pl.'s Opp'n to the Gov't Mot.

for Summ. J., Apr. 7, 2021, ECF No. 54; Def.'s Reply in Supp. of its Mot. for Summ. J., Apr. 21, 2021, ECF No. 59.

The Court held oral argument on our motion for summary judgment, and subsequently ordered supplemental briefing on (1) whether the differences between relevant OPM and DOL regulations are required to effectuate the application of the FLSA to both Federal and non-Federal employees, and (2) in the event the Court determined that the OPM regulation was invalid, the substantive legal standard to be applied in resolving the Government's motion. Order, Aug. 19, 2021, ECF No. 60.

In our supplemental brief, the Government explained that the legislative history of the FLSA's application to Federal employees, as well as OPM's imperative to balance the application of the FLSA with other laws affecting Federal employees, like the Government Employees Training Act, Pub. L. No. 85–507, 72 Stat. 327 (1958), and the Federal Employees Pay Comparability Act of 1990, Pub. L. No. 101–509, § 210, 104 Stat. 1389 (1990), accounted for any differences between the OPM and the DOL regulations. *See generally* Def.'s Suppl. Br., Sept. 22, 2021, ECF No. 65. We also explained that, if the Court were to find the OPM regulation invalid, the FLSA and other relevant statutes would apply rather than importing the DOL regulations. *Id.* Plaintiff argued that nothing adequately explained the difference between the two regulations. *See generally* Pl.'s Suppl. Br., Oct. 13, 2021, ECF No. 66.

On July 26, 2022, the Court issued its opinion under seal denying our motion for summary judgment. ECF No. 68. The court expressly found 5 C.F.R. § 551.423(a)(3) to be invalid under *Billings v. United States*, 322 F.3d 1328 (Fed. Cir. 2003),[3] because it was different

---

[3] This Court had previously questioned the validity of 5 C.F.R. § 551.423(a)(3) in a separate case claiming overtime for after-class activities during a training course for another agency, *Plaintiff No. 1 v. United States*, No. 19-1019. However, in that case, the Court left open

from the DOL regulation and because the Court did not believe anything adequately justified

OPM's departure from the DOL regulation. *See generally id.* The Court also called into

question the validity of 5 C.F.R. § 551.423(a)(2), another of OPM's training regulations. *See id.*

at 10. The opinion was unsealed on August 9, 2022. ECF No. 70.

ARGUMENT

I.    <u>Certification Of Interlocutory Appeal Is Appropriate</u>

Section 1292(d) of Title 28 authorizes this Court to certify an order for immediate

interlocutory review by the Federal Circuit. The court of appeals may then exercise its discretion

whether to accept the appeal. In relevant part, section 1292(d)(2) provides,

> [W]hen any judge of the United States Court of Federal Claims, in
> issuing an interlocutory order, includes in the order a statement
> that a controlling question of law is involved with respect to which
> there is a substantial ground for difference of opinion and that an
> immediate appeal from that order may materially advance the
> ultimate termination of the litigation, the United States Court of
> Appeals for the Federal Circuit may, in its discretion, permit an
> appeal to be taken from such order, if application is made to that
> Court within ten days after the entry of such order.

28 U.S.C. § 1292(d)(2). Accordingly, this Court may certify for interlocutory review by the

court of appeals the Court's July 26, 2022 Order by amending the order to state expressly that

(1) the order involves "a controlling question of law . . . with respect to which there is a

substantial ground for difference of opinion," and (2) "an immediate appeal from that order may

materially advance the ultimate termination of the litigation." *Id.*; *see also Coast Fed. Bank,*

*FSB v. United States*, 49 Fed. Cl. 11, 13 (2001) ("There are three factors which determine

whether certification is appropriate: whether there is a controlling question of law, whether there

---

the possibility that factual circumstances could justify any difference between OPM's and DOL's
regulations.

7

is a substantial ground for difference of opinion with respect to that question; and whether an immediate appeal may materially advance the ultimate termination of the litigation."). We respectfully submit that each of these factors demonstrates that this is an appropriate case for interlocutory review.

A.   The Validity Of 5 C.F.R. § 551.423(a)(3) Is A Controlling Question Of Law Whose Resolution Would Materially Advance The Ultimate Termination Of This Litigation

As this Court has observed: "Questions of law are 'controlling' when they 'materially affect issues remaining to be decided in the trial court.'" *Coast Fed. Bank,* 49 Fed. Cl. at 13 (quoting *Pikes Peak Fam. Hous. LLC v. United States*, 40 Fed. Cl. 673, 686 (1998)); *see also Fairholme Funds, Inc. v. United States,* 147 Fed. Cl. 126, 130 (2020) (a controlling question is one that "materially affect[s] issues remaining to be decided in the trial court"). In this case, the question of law to be addressed is whether 5 C.F.R. § 551.423(a)(3) is valid. The validity of 5 C.F.R. § 551.423(a)(3) determines whether it governs the case, or whether, as the July 26, 2022 Order indicated, the FLSA must be applied directly. And there is no dispute that the relevant tasks were not "productive work" completed "during regular working hours," *see* July 26, 2022 Order at 6 n.6.

Not only is the question of 5 C.F.R. § 551.423(a)(3)'s validity the controlling question of law, but resolution as to its validity would materially advance the ultimate resolution of the litigation. As discussed in our summary judgment motion, there is no dispute of material fact that the BFTC is an entry-level course, that plaintiff was an entry-level employee, and that plaintiff has not alleged that NIATs performed productive work during the hours they claim as overtime or that those hours were scheduled in advance of the regularly scheduled administrative workweek. Plaintiff has also not alleged that those hours should and could have been scheduled in advance. Thus, if 5 C.F.R. § 551.423(a)(3) applies, defendant has no liability for the hours

claimed.  Moreover, if 5 C.F.R. § 551.423(a)(3) is valid and the case is resolved under that regulation, it would save the FBI significant time and effort in discovery.  Discovery in this case will be complicated.  Plaintiff is pursuing a collective action on behalf of all NIATs who attended the BFTC within the applicable statute of limitations, likely hundreds of employees.  Discovery and further proceedings will be complicated by the law enforcement sensitive nature of some of the information likely to be sought during discovery.  Additionally, leaving this question unresolved will affect the FBI's ability to administer its BFTC to hundreds of current and future trainees.  Other agencies with entry-level training programs also will be left unsure of how to proceed.  And if the Federal Circuit were to determine that 5 C.F.R. § 551.423(a)(3) is invalid, then we would be able to resolve the case without doubt that the regulation does not control.

B.  There Are Substantial Grounds For A Difference Of Opinion With Respect To 5 C.F.R. § 551.423(a)(3)'s Validity

We respectfully submit that there are also substantial grounds for difference of opinion regarding the validity of 5 C.F.R. § 551.423(a)(3).  In determining the validity of an OPM regulation applying the FLSA under *Billings*, a court considers (1) "whether the OPM interpretation of the [FLSA] is reasonable," and (2) "whether any difference between OPM's interpretation and the [DOL] standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees."  *Billings,* 322 F.3d at 1334 (citing *Zumerling v. Devine*, 769 F.2d 745, 750 (Fed. Cir. 1985) ("OPM's guidelines must 'harmonize with the statute's 'origin and purpose,' . . . as well as with the Secretary of Labor's regulations.")).

Section 551.423(d), promulgated by OPM, provides that

> Time spent attending a lecture, meeting, or conference shall be considered hours of work if attendance is:
> (1) During an employee's regular working hours; or
> (2) Outside an employee's regular working hours, and
> (i) The employee is directed by an agency to attend such an event; or
> (ii) The employee performs work for the benefit of the agency during such attendance.

Regarding entry-level training specifically, section 551.423(a)(3) provides that "[t]ime spent in apprenticeship or other entry level training, or internship or other career related work study training, or training under the Veterans Recruitment Act (5 CFR part 307)[,] outside regular working hours shall not be considered hours of work, provided no productive work is performed during such periods."

The corresponding DOL regulation, 29 C.F.R. § 785.27, provides that

> Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:
> (a) Attendance is outside of the employee's regular working hours;
> (b) Attendance is in fact voluntary;
> (c) The course, lecture, or meeting is not directly related to the employees' job; and
> (d) The employee does not perform any productive work during such attendance.

Additionally, 29 C.F.R. § 785.32(b), a regulation promulgated by DOL and addressing apprentices, provides that "time spent in such related supplemental training shall not be counted as hours worked unless the written agreement specifically provides that it is hours worked" so long as "[s]uch time does not involve productive work or performance of the apprentice's regular duties."

As an initial matter, it is not clear that *Billings* should apply when the DOL regulation is an interpretive rule.  In *Billings*, the regulations at issue were legislative rules that were promulgated pursuant to regulatory authority under 29 U.S.C. § 213.  By contrast, DOL has

10

described the regulations pertinent to this case as a "practical guide for employers and employees as to how the office representing the public interest in its enforcement will seek to apply" the statute. 29 C.F.R. § 785.2 (quoting *Skidmore v. Swift*, 323 U.S. 134, 138 (1944)). Even accepting *Billings*' suggestion that a binding DOL regulation can invalidate an inconsistent OPM regulation, that principle should not be stretched further to allow DOL's *interpretive* rule to invalidate a regulation that OPM issued pursuant to notice-and-comment rulemaking.

Assuming *Billings* applies, it does not require the OPM and DOL regulations to be identical, so long as the OPM regulation is consistent with the FLSA. Regarding whether OPM's interpretation is reasonable,[4] Congress determined that OPM, and not DOL, should administer the FLSA for Federal employees because of the differences between Federal and non-Federal employment. *See* 29 U.S.C. 204(f) ("Notwithstanding any other provision of this chapter [the FLSA], or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States."). Applying its experience administering various Federal employment statutes and its statutory authority to interpret the FLSA, and having engaged in notice-and-comment rulemaking, *see* 45 Fed. Reg. 85651, 85664 (1980), *as amended* 64 Fed. Reg. 69165, 69180 (1999); 70 Fed. Reg. 72065, 72068 (2005), OPM established regulations that allow Federal non-exempt employees to receive overtime for training under the FLSA to the greatest extent possible, without running afoul of other statutory proscriptions that apply to only Federal employees (discussed in more detail below). *See Billings*, 322 F.3d at 1334 (finding that inclusion of salary-basis test for executives in DOL but not OPM regulations was appropriate to

---

[4] The Court found that "OPM's interpretation of FLSA could be reasonable, at least in the abstract." July 26, 2022 Order at 6.

account for the fact that "federal employees are subject to suspensions under Title V that are not applicable in the private sector"); *see also Adams v. United States*, 40 Fed. Cl. 303, 306-08 (1998). "Because of the peculiar nature of the statutory framework surrounding federal employment, it is reasonable for OPM's regulation to vary from the Labor Department standard . . . . Thus, the variance in OPM's regulation is no more than needed to accommodate the difference between private and public sector employment." *Billings*, 322 F.3d at 1334.

Moreover, there is good reason for the OPM and DOL regulations to differ. That difference in approach is required by another statute that applies to only Federal employees and explicitly forbids overtime pay for training related overtime in most circumstances. The Government Employees Training Act (GETA), codified at 5 U.S.C. Chapter 41, became law in 1958–16 years before the FLSA was extended to cover Federal employees. Under GETA, agencies manage their own training, determine their own training needs, and select and fund training to meet those needs. 5 U.S.C. §§ 4101-4121. Pursuant to statutory authority, OPM is tasked with providing regulations containing the principles, standards, and related requirements for the programs for the training of employees under GETA, just as it is with the FLSA. 5 U.S.C. § 4118(a). Under GETA, the head of an agency, consistent with any regulations promulgated under § 4118, may "pay all or a part of the pay (except overtime, holiday, or night differential pay) of an employee of the agency selected and assigned for training under this chapter." 5 U.S.C. § 4109 ("Expenses of Training"). Thus, as a general matter, for 60 years, Federal employees have generally been barred from receiving overtime pay (or other types of premium pay) for time spent in training. 5 U.S.C. § 4109; 5 C.F.R. § 410.402.[5]

---

[5] FLSA overtime is covered by the general bar on overtime pay during training in 5 U.S.C. 4109(a)(1), but 5 C.F.R. 410.402(d) provides for limited exceptions for FLSA overtime pay, as permitted by 5 U.S.C. 4102(b).

A second and equally important difference between the Federal and non-Federal sectors (also one related to GETA's prohibition on the payment of overtime pay for time spent in training) is found in OPM's authority to define hours of "work" for purposes of FLSA overtime pay. *See* 5 U.S.C. § 5542(c). Specifically, the Federal Employees Pay Comparability Act of 1990 added section 5542(c), the first sentence of which provides that Title 5 overtime pay rules in section 5542(a) do not apply to FLSA non-exempt employees; instead, only FLSA rules would apply. *Id.* However, section 5542(c) also provides that "the Office of Personnel Management shall by regulation prescribe what hours shall be deemed to be hours of work and what hours of work shall be deemed to be overtime hours for the purpose of such section 7 so as to ensure that no employee receives less pay by reason of" application of the first sentence of section 5542(c). *Id.* In response, OPM added provisions in the FLSA regulations to prescribe that hours of work under Title 5 rules would also qualify as FLSA hours of work, but OPM did not change the FLSA hours of work rules. 5 C.F.R. § 551.401. OPM did, however, amend its training regulations to provide that the regulations governing overtime pay for FLSA nonexempt employees during training are found in 5 C.F.R. § 551.423, and that the general prohibitions on premium pay for training are not applicable for the purposes of paying FLSA overtime pay. 5 C.F.R. § 410.402(d). In other words, FLSA overtime pay for training, as governed by 5 C.F.R. § 551.423, is an exception to GETA's general prohibition on paying overtime to Federal employees during training. Thus, for training courses, despite the general prohibition, agencies may pay FLSA non-exempt employees FLSA overtime pay for hours of work that qualify for such overtime pay. 5 C.F.R. §§ 410.402(d); 551.401(a), (f); 551.423; 551.501(a)(2).

The OPM regulations are "stricter" regarding overtime pay for training because the statutory context and history required OPM to promulgate its training overtime pay regulations

as an exception to a general rule prohibiting overtime for Federal employees' training. *See* 45

Fed. Reg. 85659-01, 85661 (1980). DOL, however, was not required to balance its training

overtime regulations against an equivalent statutory prohibition applicable to non-Federal sector

employees. Put another way, both the OPM and DOL regulations require a showing that an

exception to a general rule exists. DOL regulations proceed from a presumption of

compensability and therefore require certain criteria to be met for the time spent in entry level

training to not be compensated. In contrast, due to statutes that affect solely Federal

employment, OPM regulations proceed from a presumption of non-compensability for the entry

level training activities in question and thus require certain criteria to be met to be eligible for

compensation. *See Adams*, 40 Fed. Cl. at 306-07 (discussing how the differences between

Federal and non-Federal employees' pay structure explained why OPM regulations did not

include a salary-basis test for executives while DOL's regulations did); *see also Billings*, 322

F.3d at 1334 (same). In sum, laws governing Federal employment and training differ from laws

and policies governing the myriad types of non-Federal employers based on their various

training needs.

        GETA and the FLSA are different statutes with the "border" between them determined

by regulation. Specifically, 5 C.F.R. § 410.402(d) states in full that "[r]egulations governing

overtime pay for employees covered by Fair Labor Standards Act (FLSA) during training,

education, lectures, or conferences are found in § 551.423 of this chapter. The prohibitions on

paying premium pay found in paragraph (a) of this section are not applicable for the purpose of

paying FLSA overtime pay." *See also* 5 C.F.R. § 551.401(f) ("For the purpose of determining

hours of work in excess of 8 hours in a day under this part, agencies shall credit hours of work

under § 410.402 of this chapter, part 532 of this chapter and 5 U.S.C. 5544, and part 550 of this

chapter, as applicable."); 5 C.F.R. § 551.401(g) ("For the purpose of determining hours of work in excess of 40 hours in a week . . . agencies shall credit hours of work under § 410.402 of this chapter.").  That is, the very regulations that delineate the "border" between GETA and FLSA are promulgated by OPM, relying on its expertise in administering both statutes.  Arguably, 5 C.F.R. § 410.402(d) cannot invalidate 5 C.F.R. § 551.423, when 5 C.F.R. § 410.402(d) explicitly provides that 5 C.F.R. § 551.423 is the training regulation that contains the FLSA-related exceptions to GETA.

OPM's ability to define hours of work is also relevant because OPM used that authority when propagating 5 C.F.R. § 551.423 to determine what type of activities during training counted as hours worked.  Additionally, the fact that OPM intended to bring its regulations "into line with" DOL's does not mean that OPM intended the regulations to be identical in all respects. *See* July 26, 2022 Order at 9 (citing 45 Fed. Reg. at 85661).

II.    <u>A Stay Pending Appeal Is Appropriate</u>

For the reasons stated below, the interests of judicial economy and economy for the parties are best served by staying further proceedings pending appeal.  "A court has broad discretion to stay proceedings before it." *Coast Fed. Bank*, 49 Fed. Cl. at 15.  The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *UnionBanCal Corp. & Subsidiaries v. United States*, 93 Fed. Cl. 166, 167 (2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  "The orderly course of justice and judicial economy is served when granting a stay simplifies the 'issues, proof, and questions of law which could be expected to result from a stay.'"  *Id.* (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

As previously discussed, plaintiff is pursuing a collective action on behalf of all NIATs who attended the BFTC within the applicable statute of limitations, likely hundreds of employees. Discovery and further proceedings will be complicated by the law enforcement sensitive nature of some of the information likely to be sought during discovery. If 5 C.F.R. § 551.423(a)(3) is valid, and the case is resolved under that regulation, these efforts would be for naught. Additionally, as illustrated above, there is a significant difference of opinion about a controlling question in this case. Until that matter is resolved, the parties are operating in an uncertain legal environment, meaning the outcome of any un-stayed efforts are of uncertain value.

## CONCLUSION

The court's July 26, 2022 order, finding 5 C.F.R. § 551.423(a)(3) invalid, raises a controlling question of law upon which there is a substantial ground for a difference of opinion and whose resolution may materially advance the ultimate resolution of the litigation in this Court. Accordingly, we respectfully request that the Court certify its July 26, 2022 Order for interlocutory appeal by amending the order to include the findings required under 28 U.S.C. § 1292(d)(2). In addition, the United States respectfully requests that the Court stay further proceedings pending appeal.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

s/*Reginald T. Blades, Jr.*
REGINALD T. BLADES, Jr.
Assistant Director

s/*Sarah E. Kramer*
SARAH E. KRAMER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-0537
Facsimile: (202) 305-2062
Email: Sarah.E.Kramer@usdoj.gov

November 23, 2022                    *Attorneys for Defendant*